## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  13- CV-2103 |
| v. | ) ) ) | |
| UBER TECHNOLOGIES, INC., a Delaware corporation, and CAREN EHRET, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff LANDMARK AMERICAN INSURANCE COMPANY ("Landmark") by and through its attorneys TRAUB LIEBERMAN STRAUS & SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against Defendants UBER TECHNOLOGIES, INC. ("Uber"), and CAREN EHRET, states as follows:

### Nature of Action

1.     Plaintiff Landmark is an insurance company and issued two claims-made professional liability policies of insurance to Defendant Uber.  Landmark brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq.* and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Uber under the subject policies for a putative class action complaint styled *Caren Ehret, individually and on behalf of a class of similarly defrauded persons v. Uber Technologies, Inc.*, Case No. 12 CH 36714, filed in the Circuit Court of Cook County, Illinois, Chancery Division, on October 1, 2012 (the "Ehret lawsuit").  Landmark seeks a declaration that no coverage is

available under the subject Landmark Policies and that Landmark has no obligation to defend or indemnify Uber in connection with the Ehret lawsuit.

2.     There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the Landmark Policies. Landmark contends that there is no obligation to defend or indemnify Uber in connection with the claims asserted in the underlying Ehret lawsuit based on the terms of the Landmark Policies and applicable law.

3.     Landmark has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Landmark Policies.   A judicial declaration is necessary and appropriate at this time so that Landmark may ascertain its rights and duties with respect to defense and indemnity under the Landmark Policies for the underlying Ehret lawsuit.

4.     Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

5.     Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(b), in that all Defendants reside in this district and a substantial part of the events giving rise to this claim occurred in this district.

### The Parties

6.     Landmark American Insurance Company is an Oklahoma corporation engaged in the insurance business with its principal place of business in Atlanta, Georgia.

7.    Defendant Uber Technologies, Inc., is a Delaware corporation with its principal place of business at 800 Market Street, San Francisco, California. Uber also maintains registered office and agent in Chicago, Illinois, and does business in and around Chicago, Illinois.

8.    On information and belief, Defendant Caren Ehret is a citizen of Chicago, Cook County, Illinois. Caren Ehret is joined as a defendant herein as a necessary party and so that she may be bound by the judgment entered in this case. Caren Ehret is a necessary party to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure. If Defendant Caren Ehret executes a stipulation agreeing to be bound by any judgment entered herein, Landmark will voluntarily dismiss Caren Ehret from this action.

### The Underlying Ehret Lawsuit

9.    On October 1, 2012, Caren Ehret filed a putative class action lawsuit styled *Caren Ehret v. Uber Technologies, Inc.*, cause no. 12-CH-36714, in the Circuit Court of Cook County, Illinois, Chancery Division against Uber sounding in consumer fraud and deceptive business practices (the "Ehret lawsuit"). A copy of the Ehret lawsuit is attached hereto as **Exhibit A**.

10.    On information and belief, the Ehret lawsuit was served on Uber on October 2, 2012.

11.    The Ehret lawsuit alleges that since approximately April 2012 Uber has sold and continues to sell taxi cab transportation reservation/payment services (distinct from actual transportation service) and associated software by which consumers arrange and pay for taxi cab transportation in and around the Chicago, Illinois area.

12.    The Ehret lawsuit alleges that Uber sells a so-called "smart-phone" application by which consumers can arrange and pay for taxi cab rides electronically via the smart-phone app. Payment for taxi cab rides arranged via Uber's app is made via consumers' credit card account,

after the consumer provides the necessary credit card account information to Uber through Uber's app.

13.     The Ehret lawsuit alleges that in its internet postings and on its app advertising the sale of its merchandise, Uber represents that "we automatically charge your credit card the metered fare + 20% gratuity. A receipt is emailed to you." Similarly, when consumers book a taxi ride on defendant's app, the text of the app represents to those consumers that a 20% gratuity will be automatically added to the metered fare. Finally, when consumers receive emailed receipts for taxi rides, the receipts also represent that 20% has been added automatically to the metered fare as a "gratuity" or "service charge."

14.     According to the Ehret lawsuit, Uber does not remit the full 20% of the represented "gratuity" to the taxi driver, car owner, or taxi company providing transportation services. Instead, Uber allegedly keeps a substantial portion of this additional charge as its own additional revenue and profit on each taxi ride arranged and paid for by consumers using Uber's app.

15.     The Ehret lawsuit avers that Uber's representations that the additional 20% charge automatically added to the "metered fare" for their taxi rides is a "gratuity" is false, misleading, and likely to create confusion in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2 (the "Consumer Fraud Act").

16.     More specifically, Ehret alleges that the term "gratuity" allegedly suggests a sum paid to the taxi driver/owner in recognition of transportation services that is distinct and different from the "metered fare." According to the Ehret complaint, these representations and practices are false price advertising. Further, in this way, Uber also conceals that it is passing along to

consumers credit-card processing fees in violation of City of Chicago Ordinances/Rules applicable to taxi cabs (MCC §9-112-510, Rule TX5.07(c)).

17.    The underlying complaint alleges that Ehret arranged for a taxi cab pickup and ride using Uber's app on September 9, 2012, in which she was charged a 20% "gratuity." The complaint alleges that a class of over one thousand have used Uber's app and been charged a 20% "gratuity" in this same way.

18.    The Ehret lawsuit seeks certification of a class action and demands fair and reasonable "compensatory damages," punitive damages, attorneys' fees and costs, and injunctive relief requiring defendant to truthfully advertise and charge for the transportation services it arranges.

### The Landmark Policies

19.    Landmark issued two claims-made professional liability policies providing Cyber, Technology, Professional Services and Network Security Coverage, policy numbers LCY816794 and LCY819510, to Uber, effective August 5, 2011, to October 5, 2012, and October 5, 2012, to October 5, 2013, respectively (collectively, the "Landmark Policies"). The Landmark Policies include six (6) separate coverage parts, identified as Insuring Agreements A – F. These Insuring Agreements provide the following coverage: **(A) Professional and Technology Services Errors and Omissions Liability, (B) Media Activities Liability, (C) Network Security and Privacy Liability, (D) Privacy Breach Coverage, (E) Data Assets Breach,** and **(F) Cyber Extortion Threat**.

20.    The 2011-2012 Landmark Policy provides limits of $2,000,000 per claim for Professional and Technology Services Errors & Omissions Liability, Media Activities Liability, and Network Security & Privacy Liability and $2,000,000 in the aggregate. Coverage parts D

(Privacy Breach), E (Data Assets Breach), and F (Cyber Extortion Threat) include limits of $500,000 per Event. The 2011-2012 Landmark Policy is attached hereto as **Exhibit B**.

21. The 2012-2013 Landmark Policy provides limits of $3,000,000 per claim for Professional and Technology Services Errors & Omissions Liability Media Activities Liability, and Network Security & Privacy Liability and $3,000,000 in the aggregate. Coverage parts D (Privacy Breach), E (Data Assets Breach), and F (Cyber Extortion Threat) include limits of $500,000 per Event. The 2012-2013 Landmark Policy is attached hereto as **Exhibit C**.

22. The Declarations of the 2011-2012 Landmark Policy, Item 5., contains a Retroactive Date of August 5, 2011.

23. The Declarations of the 2012-2013 Landmark Policy, Item 5., contains a Retroactive Date of September 5, 2012. The 2012-2013 Landmark Policy, however, also includes an Endorsement No. 12 ("Retroactive Date Amendatory Endorsement") that provides for Limits of Insurance of $2MM/$2MM with a "Retroactive Date" of August 5, 2011, for Insuring Agreements A-C.

24. Part I (Insuring Agreements), Coverage A (Professional and Technology Services Error and Omissions Liability Coverage) of the Landmark Policies provides as follows:

> If Insuring Agreement A, Professional and Technology Services Errors and Omissions Liability Coverage is purchased, the Company will pay on behalf of the **Insured** all **Damages** and associated **Claim Expenses** that the **Insured** becomes legally obligated to pay, in excess of the applicable Deductible and within the applicable Limit of Insurance, incurred as a direct result of a covered **Claim** alleging a:
>
> 1. **Professional Services Error** or
>
> 2. **Technology Services Error**
>
> That was first committed on or after the **Retroactive Date** and before the expiration of the **Policy Period**; provided that the **Claim** is first made against the **Insured** during the **Policy Period** or the applicable Extended

Reporting Period and the Claim is reported to the Company in conformity with Condition A. of this Policy.

25. The Landmark Policies define "Professional Services Error" in relevant part as follows:

> **Professional Services Error** means any negligent act, error or omission or series of negligent acts, errors or omissions actually or allegedly committed by any **Insured** in their capacity as such, in the rendering of or failure to render **Professional Services**. **Professional Services Error** does not include **Technology Services Errors, Media Activities Errors, Network Security Errors, Privacy Errors, Privacy Breaches, Data Assets Breaches, Cyber Extortion Threats**, any other **Error**, or any **Events**.

26. The Landmark Policies define "Professional Services" as follows:

> **Professional Services** means only those professional services specified in Item 1. of the Declarations and performed for a fee for clients of the **Named Insured** by an **Insured**, or by any person or entity acting on behalf of the **Named Insured**.

27. The corresponding Item 1 of the Declarations describes Uber's "professional services" as "N/A."

28. The Landmark Policies define "Technology Services Error" in relevant part as follows:

> **Technology Services Error** means any negligent act, error or omission or series of negligent acts, errors or omissions actually or allegedly committed by any **Insured** in their capacity as such, in the **Insured's** rendering of or failure to render **Technology Services** to clients of the **Named Insured** for a fee or the resulting failure of the **Named Insured's Technology Products** to properly perform the function or properly serve the purpose intended for clients of the **Named Insured**. **Technology Services Error** does not include **Professional Services Errors, Media Activities Errors, Network Security Errors, Privacy Errors, Privacy Breaches, Data Assets Breaches, Cyber Extortion Threats**, any other **Error**, or any **Events**.

29. The term "Technology Services" is defined in relevant part as follows:

> **Technology Services** means:

1. Computer services consisting of: data auditing, conversion, encryption, mining, processing and testing; software design, development, distribution, implementation, installation, integration, leasing, licensing, maintenance and support; consulting or training on computer networks or systems;

2. Telecommunications services consisting of: consulting, design, development, or training on telecommunications systems including wireless networks, cloud computing, voice over internet protocol (VOIP) or webchat;

3. Internet services consisting of: website, application service provider (ASP), and internet service provider (ISP) design, development and hosting including electronic or digital media created or controlled and disseminated by or on behalf of the **Named Insured** for others for a few; and/or

4. Those services specified in Item 1. of the Declarations.

30. The corresponding Item 1. of the Declarations describes Uber's "Technology Services" as:

SOFTWARE DEVELOPMENT FOR SMART PHONE APPLICATION AND ALL SERVICES DISSEMINATED VIA www.uber.com.

31. The Landmark Policies define "Claim" as follows:

**Claim** means any written demand for money, services, non-monetary relief or injunctive relief received by an **Insured**, including service of suit or the institution or arbitration proceedings against an **Insured**, even if any of the allegations of the **Claim** are groundless, false or fraudulent. Solely for the purposes of Insuring Agreement C, **Claim** also means a **Regulatory Claim**. **Claim** does not mean or include any **Event**.

32. The policies define "Error" as follows:

**Error** means a **Professional Services Error, Technology Services Error, Media Activities Error, Network Security Error, Privacy Error**, and/or any endorsed Insuring Agreement incorporating "**Error**" within its terms, as the context may indicate.

33. The policies define "Damages" as follows:

**Damages** means monetary judgment, award or settlement, including punitive or exemplary damage (if insurable under the applicable law most favorable to the insurability of punitive or exemplary damage), which an **Insured** is legally obligated to pay as a direct result of a covered **Claim** to which this Policy applies. **Damages** shall not include:

1. any amounts the **Insured** is not legally liable or financially obligated to pay;

2. any awards or damages assessed that are a multiple of compensatory damages; any fines, taxes or loss of tax benefits; sanctions or penalties, except any regulatory fine or penalty assessed as a direct result of an otherwise covered **Regulatory Claim**;

3. any non-monetary award, specific performance award or equitable relief of any kind issued by any jurisdictional government authority against any Insured or any costs of or fees incurred in complying with orders granting such relief;

4. any amounts for any matter that is uninsurable by applicable law;

5. discounts, prizes, coupons, awards, redemptions or other incentives;

6. future profits, restitution, royalty, disgorgement of any unjust enrichment, financial advantage or profit by an **Insured** to which an **Insured** was not legally entitled;

7. the offset of or return of fees, charges, commissions or earnings for goods or services provided or agreed to be provided;

8. liquidated damages pursuant to a contact, unless, even in the absence of that contract, the **Named Insured** would have been liable for such damages as a direct result of an otherwise covered **Claim**; however, damages shall only be payable hereunder tot eh extent that such damages exceed the amount of such liquidated damages agreement;

9. any profits foregone, or costs incurred, for the recall, correction or reperformance of any services, products or goods of any kind of the **Insured**, including but not limited to any **Media Activities** and any **Technology Products**;

10. any profit, fee, royalty, charge, cost, or expense of any kind incurred to obtain the rights to or license to promote or use any

goods, data, information, depiction, service or product of any kind, including but not limited to any **Media Activities**;

11.    any amounts other than those that compensate solely for a **Claim** caused by a covered **Error**; or

12.    any amounts attributable to any **Event**, as defined herein, regardless of whether or not it is covered.

34.    The Landmark Policies contain an exclusion J. which provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**...or **Claim Expenses** based upon, alleging, or arising out of:

* * *

J.    False, misleading, unfair or deceptive trade practices allegations, fraudulent or misrepresenting statements in any **Advertising**, or in any promotion or sale of an **Insured's** own products or services, or any unfair competition allegations arising out of the foregoing.

35.    The Landmark Policies also include an exclusion L. that provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**...or **Claim Expenses** based upon, alleging, or arising out of:

* * *

L.    False, deceptive or unfair business practices or any violation of consumer protection laws. However, this exclusion shall not apply solely with respect to an **Error** expressly covered under Insuring Agreement C as a direct result of a **Regulatory Claim** solely for a violation of **Privacy Regulations**.

36.    The Landmark Policies also include an exclusion V. that provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**...or **Claim Expenses** based upon, alleging, or arising out of:

* * *

V.    Any actual or alleged inaccurate, inadequate, or incomplete description of or disclosure of the price of goods, products or services; or any estimate, representation, warranty or guarantee that is actually or allegedly exceeded with respect to any fee, expense, cost, or price of any goods, products or services.

37.    The Landmark Policies also include an exclusion Y. that provides in relevant part:

> The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**...or **Claim Expenses** based upon, alleging, or arising out of:
>                                          * * *
> Y.    Any disputes over any fees, expenses, costs, deposits, commissions or charges for goods, products, or services.

38.    The Landmark Policies also include an exclusion A. that provides in relevant part:

> The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**...or **Claim Expenses** based upon, alleging, or arising out of:
>
> A.    1.    Any dishonest, fraudulent, malicious, or intentional act, error or omission, or any intentional or knowing violation of the law, including any law governing Protected Data, committed by, in collusion with, with the consent of or at the direction of the Insured; or
>
>       2.    The gaining in fact of any profit, remuneration or financial advantage to which any Insured is not legally entitled; or
>
>                                          * * *
>
> However, these exclusions shall not apply to Claim Expenses or the Company duty to defend any such Claim otherwise potentially covered under a purchased Insuring Agreement until there is a final adjudication against the Insured, including but not limited to a judgment against, binding arbitration against, adverse admission by, finding of fact against or plea of no contest by the Insured, at which time the Insured and/or Named Insured shall reimburse the Company for any and all Claim Expenses paid by the Company.
>
>                                          * * *

## COUNT I – DECLARATORY JUDGMENT
## (2011-2012 Landmark Policy)

39.    Plaintiff incorporates and re-alleges the preceding paragraphs 1-38 as if fully restated and set forth herein as paragraph 39.

40.     Plaintiff does not owe a duty to defend or indemnify Uber in the Ehret lawsuit

under the 2011-2012 Landmark Policy for the following reasons:

A.     The Landmark Policies do not afford coverage for a "Professional Services Error" as defined in the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

B.     The Ehret lawsuit fails to allege a "Technology Services Error" as defined by the Landmark Policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

C.     The Ehret lawsuit fails to allege a "Media Activities Error" as defined by the Landmark Policies, and therefore, Insuring Agreement B. of the Landmark Policies is not satisfied.

D.     The Ehret lawsuit fails to allege a "Network Security Error" or "Privacy Error" as defined by the Landmark Policies, and therefore, Insuring Agreement C. of the Landmark Policies is not satisfied.

E.     The Ehret lawsuit fails to allege a "Privacy Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement D. of the Landmark Policies is not satisfied.

F.     The Ehret lawsuit fails to allege a "Data Assets Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement E. of the Landmark Policies is not satisfied.

G.     The Ehret lawsuit fails to allege a "Cyber Extortion Threat" as defined by the Landmark Policies, and therefore, Insuring Agreement F. of the Landmark Policies is not satisfied.

H.     Even if the Ehret lawsuit alleges an "Error," which it does not, the relief sought in the Ehret lawsuit fails to allege "Damages" as defined by the Landmark Policy, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

I.     Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion J. bars coverage.

J.     Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion L. bars coverage.

K.     Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion V. bars coverage.

L.   Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion Y. bars coverage.

M.   Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion A. bars coverage.

**WHEREFORE**, Plaintiff LANDMARK AMERICAN INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2011-2012 Landmark Policy, together with the following relief:

a.   That this Court find and declare that Landmark has no duty to defend Uber Technologies, Inc., under the 2011-2012 Landmark Policy in the underlying Ehret lawsuit;

b.   That this Court find and declare that Landmark has no duty to indemnify Uber Technologies, Inc., under the 2011-2012 Landmark Policy in the underlying Ehret lawsuit;

c.   That this Court grant such other and further relief as it deems just and equitable.

### COUNT II – DECLARATORY JUDGMENT
### (2012-2013 Landmark Policy)

41.   Plaintiff incorporates and re-alleges the preceding paragraphs 1-40 as if fully restated and set forth herein as paragraph 41.

42.   Plaintiff does not owe a duty to defend or indemnify Uber in the Ehret lawsuit under the 2012-2013 Landmark Policy for the following reasons:

A.   The Ehret lawsuit was served on Uber on October 2, 2012, within the 2011-2012 Landmark Policy Period and prior to the inception of the 2012-2013 policy period, and therefore, the "Claim" was first made during the 2011-2012 policy period and fails to satisfy the Insuring Agreement of the 2012-2013 Landmark Policy.

B.  The Landmark Policies do not afford coverage for a "Professional Services Error" as defined in the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

C.  The general coverage provision of Insuring Agreement A of the Landmark Policies does not cover an underlying claim, like the Ehret lawsuit, for "Consumer Fraud" or "fraudulent misrepresentation." Accordingly, the Ehret lawsuit fails to allege a "Technology Services Error" as defined by the Landmark Policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

D.  The Ehret lawsuit fails to allege a "Media Activities Error" as defined by the Landmark Policies, and therefore, Insuring Agreement B. of the Landmark Policies is not satisfied.

E.  The Ehret lawsuit fails to allege a "Network Security Error" or "Privacy Error" as defined by the Landmark Policies, and therefore, Insuring Agreement C. of the Landmark Policies is not satisfied.

F.  The Ehret lawsuit fails to allege a "Privacy Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement D. of the Landmark Policies is not satisfied.

G.  The Ehret lawsuit fails to allege a "Data Assets Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement E. of the Landmark Policies is not satisfied.

H.  The Ehret lawsuit fails to allege a "Cyber Extortion Threat" as defined by the Landmark Policies, and therefore, Insuring Agreement F. of the Landmark Policies is not satisfied.

I.  Even if the Ehret lawsuit alleges an "Error," which it does not, the relief sought in the Ehret lawsuit fails to allege "Damages" as defined by the Landmark Policy, and therefore, Insuring Agreement A. of the Landmark Policy is not satisfied.

J.  Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion J. bars coverage.

K.  Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion L. bars coverage.

L.  Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion V. bars coverage.

M.  Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion Y. bars coverage.

N.  Even if the Ehret lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion A. bars coverage.

**WHEREFORE,** Plaintiff LANDMARK AMERICAN INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2012-2013 Landmark Policy, together with the following relief:

a.  That this Court find and declare that Landmark has no duty to defend Uber Technologies, Inc., under the 2012-2013 Landmark Policy in the underlying Ehret lawsuit;

b.  That this Court find and declare that Landmark has no duty to indemnify Uber Technologies, Inc., under the 2012-2013 Landmark Policy in the underlying Ehret lawsuit;

c.  That this Court grant such other and further relief as it deems just and equitable.

### JURY DEMAND

Plaintiff demands the right to trial by jury on all issues so triable.

Dated this 19th day of March 2013.

Respectfully submitted,

/s/ Michael S. Knippen
One of the Attorneys for LANDMARK
AMERICAN INSURANCE COMPANY

Michael S. Knippen
Attorney No. 6185723
Brian C. Bassett
Attorney No. 6285714
Jason M. Taylor
Attorney No. 6293925
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
303 W. Madison Street, Suite 1200
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)